UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| STARLENE G. TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>RON NEAL, et al.,<br><br>Defendants. | CAUSE NO. 3:25-CV-613-GSL-JEM |

OPINION AND ORDER

Starlene G. Taylor, a/k/a Gregory A. Taylor, a prisoner without a lawyer, filed a complaint in which she asserted a claim for injunctive relief for protection against other prisoners at the Indiana State Prison. ECF 2. In the complaint, Taylor alleges that she is a transgender woman, and at the end of March 2025, two staff members at Indiana State Prison destroyed the female undergarments and makeup that she was allowed to possess and outed her as transgender to other inmates on the range where she was housed. Taylor alleges those staff members told several inmates on the range that she as a "Little Dick Sucking Faggot." *Id.* at 2. This made her a target to the other inmates.

According to the complaint, Taylor filed a tort claim on May 17, 2025, about her damaged property, and she alleges that after submitting this tort claim, she started getting threatened for being a snitch (though she does not say by whom), including threats to set her on fire, beat her up, or stab her. Taylor filed a Request for Protection that same day, May 17, explaining the situation. However, on July 1, 2025, the protection request was denied without any explanation. Taylor further alleges that she

has heard case managers tell inmates that they "can do whatever [they] want to this little Rat-Bitch." *Id.* at 3. She additionally asserts that her status as a transgender woman is enough, on its own, to put prison officials on notice of the risk to her safety in general population. On July 18, 2025, the court construed the complaint as including a motion for a preliminary injunction and ordered the Warden to file a response. ECF 4.

On August 8, 2025, the Warden filed his response. ECF 11. The Warden explains that Taylor has been housed in the restrictive housing unit since September 11, 2024, and will remain there until at least August 17, 2026. In this unit, Taylor is housed by herself and has no physical contact with other inmates. More specifically, the inmates in restrictive housing cannot move freely outside of their cells but must be handcuffed and escorted by correctional staff at all times. These inmates are also individually escorted to partake in recreation and to shower alone. Though inmates can see and speak to other inmates, they have no opportunity for physical contact.

The Warden explains that the protective custody unit allows inmates to move freely within the unit, and space within this unit is limited. For an inmate to receive protective custody, there must be a specific imminent threat from an identifiable person or group of people, or the individual inmate must have a history of victimization in prison. The purpose of these requirements is to assist correctional staff with protecting inmates in the protective custody unit and to ensure that the inmates with the greatest need are granted access.

According to the Warden, the Indiana State Prison has a population of nineteen transgender inmates, not including Taylor. Seventeen of them are housed with the

general population, and none of them are in the protective custody unit. The Warden reviews and discusses the status of each transgender inmate at monthly meetings. However, the Warden remains "unaware of significant violence toward transgender inmates at ISP that would suggest that inmates face an unreasonable risk of harm from being housed in general population." ECF 11-3 at 3.

The Warden represents that Taylor has no significant history of violence by other inmates but has engaged in self-harm with manipulative intent on multiple occasions, which he demonstrates with medical records and disciplinary records. In 2025, correctional staff found Taylor guilty of ten disciplinary offenses, including battery against staff, arson, possession of controlled substances, and refusing orders.

On May 17, 2025, Taylor submitted a request for protective custody, which read, "My life is being threatened by inmates because I filed a lawsuit against [correctional staff] for destroying my make up as I'm transgender. I have been threatened to be raped, set on fire, and murdered." ECF 11-2 at 32. When interviewed by a unit team manager on May 20, Taylor responded, "Someone threw alcohol on my bed so I threw water and hit an officer. The officer sent me on the range in my panties. Because I am transgender is a lot of why it's happening." *Id.* On May 22, the unit team manager, a correctional supervisor, and Taylor's psychologist denied the request because Taylor provided no details as to who made the threats and because it was unclear how a lawsuit against correctional staff related to the threats Taylor received from inmates. They also discussed that they would be even less able to protect Taylor against similar threats from inmates in protective custody given that inmates in protective custody are

3

able to move freely within the unit and that Taylor is openly transgender. They further discussed that Taylor had no significant history of being assaulted in prison but had a significant history of manipulation through self-harm or complaints of threatened violence.

On August 5, 2025, the Warden received a letter from Taylor indicating that two inmates had raped her and that a correctional lieutenant had encouraged it. ECF 11-5. On August 7, 2025, investigators attempted to interview Taylor regarding these allegations, but she refused to cooperate with the investigation. The investigator interviewed the correctional lieutenant who denied the accusation, and the investigator found that, based on the security procedures in the restrictive housing unit, "no two offenders have the opportunity to interact in a manner that could result in an unwanted sexual assault." ECF 11-7 at 2.

After the Warden had filed his response, the court granted Taylor two extensions, setting the deadline for Taylor to file a reply for November 14, 2025. ECF 22, ECF 40. On November 18, 2025, Taylor filed a third motion to extend the deadline to file a reply in support of the motion for a preliminary injunction to December 15, 2025, which remains pending. ECF 46. She explains that she needs additional time due to the need to conduct discovery and because she had been in maximum security housing until November 8, 2025, without access to writing materials.

It is unclear why Taylor needs discovery to file a response. A significant portion of the material facts asserted by the Warden involve matters within Taylor's personal knowledge, including the specific nature of any threats she has received, the restrictive

4

conditions of her current housing placement, whether any other inmates have physically attacked her, and her interactions with correctional staff who tried to interview her regarding her requests for protective custody. Further, even if Taylor needed more time when she filed this motion, it does not appear that she needs more time now. Her proposed deadline expired two months ago, and she has since filed an amended complaint that omits any reference to any risk of harm posed by other inmates. ECF 50. Additionally, review of the amended complaint suggests that Taylor refers to her placement in a secure medical cell on suicide watch on October 28, 2025. This suggests that Taylor lacked writing materials for only eleven days when the court has now allowed Taylor more than six months to file a reply. Moreover, the Warden responds that Taylor refused to go to the law library when offered an opportunity to do so, which Taylor does not rebut. Therefore, the court will deny the motion to extend and resolve the motion for a preliminary injunction on the merits.

"[A] party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied." *Cassell v. Snyders*, 990 F.3d 539, 544–45 (7th Cir. 2021). "If these threshold factors are met, the court proceeds to a balancing phase, where it must then consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Id.* "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not

be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Instead, the issuance of an injunction is committed to the "sound discretion" of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. "[I]n order to state a section 1983 claim against prison officials for failure to protect, [a plaintiff] must establish: (1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). Deliberate indifference is a high standard, and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

Taken at face value, Taylor's allegations suggest that her conditions of confinement pose a substantial risk of harm. However, as noted by the Warden, Taylor

6

has only vaguely described the harms and threats of harm inflicted upon her. Further, it is puzzling as to why Taylor has refused to provide additional information, including her refusal to cooperate with the unit team manager and the investigator who tried to interview her and her decision not to file a timely reply brief. Additionally, it is unclear how other inmates could harm her or fulfill threats of violence given the Warden's undisputed description of the conditions in the restrictive housing unit. Given these concerns, the court cannot find that Taylor has adequately shown that her conditions of confinement pose a substantial risk of harm or that she will likely suffer irreparable harm absent injunctive relief.

What is clear is that correctional staff have not responded to Taylor's allegations of threats and physical attacks with deliberate indifference. Significantly, the undisputed record demonstrates that the robust protective measures within the restrictive housing unit allow inmates to leave their cell only when they are handcuffed and escorted by correctional staff and that the inmates shower and partake in recreation alone. Placing Taylor is a housing unit like this one where no physical contact between inmates can occur under ordinary circumstances does not strike the court as exhibiting deliberate indifference to the risk of harm posed by other inmates.

Further, when Taylor submitted a request for protective custody on May 17, 2025, a unit team manager interviewed her three days later, and she provided a vague and seemingly unresponsive answer. The unit team manager then engaged in a substantive discussion with a correctional supervisor and Taylor's psychologist, who concluded that Taylor was safer at her current location in restrictive housing than the

7

protective custody unit. Based on the present record, that conclusion was reasonable and did not reflect deliberate indifference.

When Taylor submitted another request for protective custody on August 5, 2025, the Warden promptly ordered an investigation. By August 8, the investigator interviewed Taylor, who refused to cooperate, and had also interviewed the correctional sergeant whom Taylor identified as a witness, who denied any awareness that other inmates had assaulted Taylor. The investigator also found that the ordinary conditions of the restrictive housing unit would not have allowed for such assaults to occur. The court cannot find that the Warden acted with deliberate indifference when Taylor requested protection or when he declined to act based on the preliminary results of the investigation.

Upon review of the record, it is readily apparent that Taylor's unexplained reluctance to provide additional information frustrated correctional staff's efforts to protect her. In the second request for protective custody, Taylor identified the inmate perpetrators and a witness but impeded the investigator's ability to verify the allegations by declining to provide specific times, dates, or locations. In the first request for protective custody, Taylor did not even identify the inmates who threatened her. Moreover, given Taylor's substantial history of manipulation, the court cannot find that correctional staff's reluctance to undertake additional protective measures without any independent verification of the allegations amounts to deliberate indifference. Nor does Taylor offer any rebuttal to the Warden's well-supported argument that Taylor is safer in the restrictive housing unit than in protective custody. It is unclear why Taylor has

declined to engage with correctional staff's efforts to assist her or with the Warden's arguments, but, on this record, the court cannot find a likelihood of success on the merits.

In sum, Taylor has not adequately demonstrated a likelihood of success on the merits or irreparable harm. The record as a whole strongly suggests that correctional staff have engaged in reasonable measures to protect Taylor from other inmates, that she is not presently facing a substantial risk of harm from other inmates, and that Taylor has frustrated efforts to assess whether additional protective measures are warranted. Therefore, the court denies the motion for a preliminary injunction.

Taylor filed motions for sanctions against the Warden. ECF 14, ECF 24. The court retains the "inherent power to sanction a party who has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015). To impose sanctions under its inherent authority, a court "must first make a finding of bad faith, design to obstruct the judicial process, or a violation of a court order." *Fuery v. City of Chicago*, 900 F.3d 450, 463–64 (7th Cir. 2018).

Taylor contends that the Warden incorrectly represented that she had been found guilty of possessing controlled substances when that disciplinary charge had been dismissed. However, Taylor does not adequately demonstrate that the Warden made this error in bad faith, and, given the immaterial nature of this particular disciplinary offense, it seems unlikely that the Warden had any intent to obstruct the judicial process.

Taylor next contends that the Warden misrepresented that he was unaware of a "general tendency of significant violence toward transgender inmates at the Indiana State Prison" because inmates recently sexually assaulted a transgender inmate in another cellhouse. However, Taylor offers no explanation as to how she obtained this information, nor has she filed any exhibits to support it. Further, it is debatable whether a single recent incident of violence amounts to a general tendency of violence, so the court cannot find that this is a misrepresentation. Taylor also contends that her disciplinary charge of arson and the sanctions imposed were unwarranted, but it is entirely unclear how this contention suggests that the Warden should be sanctioned or how the disciplinary charge is materially relevant issues in this case. Therefore, the motions for sanctions are denied.

Taylor filed an order to compel defense counsel, the Warden, and witnesses to refer to her by female pronouns and by her preferred name. ECF 32. While Taylor's request is reasonable and the court itself has complied with it, compelling such references raises substantial First Amendment concerns. *See Darlingh v. Maddaleni*, 142 F.4th 558, 566 (7th Cir. 2025) (finding that the plaintiff's "particularized speech interest" in opposing gender transitions was "strong"); *Kluge v. Brownsburg Cmty. Sch. Corp.*, 432 F. Supp. 3d 823, 839 (S.D. Ind. 2020) ("To be sure, issues relating to the treatment of individuals based on their gender identity are of great public importance."). Given these concerns, the court denies this motion.

The Warden filed a motion to file Taylor's medical records and departmental records relating to her safety under seal, explaining that they contain Taylor's

confidential and sensitive information. ECF 42. Because this motion is unopposed and because it is presently unclear whether these particular records will be material to resolving this case, the court will grant this motion at this time. However, if the parties file a dispositive motion relying on any of these materials, there is a presumption that they will become part of the public record. *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002) ("[V]ery few categories of documents are kept confidential once their bearing on the merits of a suit has been revealed."); *Matter of Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992) ("What happens in the halls of government is presumptively open to public scrutiny. Judges deliberate in private but issue public decisions after public arguments based on public records.").

For these reasons, the court:

(1) DENIES the motion for a preliminary injunction (ECF 5);

(2) DENIES the motions for sanctions (ECF 14, ECF 24);

(3) DENIES the motion to compel (ECF 32);

(4) GRANTS the motion to seal (ECF 42); and

(5) DIRECTS the clerk to maintain ECF 37, ECF 43, ECF 44, and ECF 45 under seal.

SO ORDERED on February 12, 2026

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT